**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | : | |
| ALLIANCE FOR TELECOMMUNICATIONS | : | |
| INDUSTRY SOLUTIONS, INC. | : | |
| v. | : | Civil No. CCB 05-440 |
| | : | |
| EDWARD A. HALL, *et al.* | : | |
| | : | |

**MEMORANDUM**

Plaintiff Alliance for Telecommunications Industry Solutions, Inc. ("ATIS") has filed

suit against defendants Edward A. Hall, Lynsie Hall, David Crowe, TelecomXchange

International LLC ("TXI"), Cellular Networking Perspectives, Ltd., ("CNP") and OmniLearn

LLC.  The pending litigation arises from the decision of the International Forum on ANSI-41

Standards and Technology ("IFAST"), an unincorporated association, to transfer the secretariat

function once performed by ATIS to a new organization founded by Crowe and Hall.  ATIS's

complaint alleges several causes of action including: (1) breach of fiduciary duty; (2)

conversion; (3) tortious interference with economic relations; and (4) civil conspiracy.  ATIS

also seeks a declaratory judgment that ATIS has the sole right to control the operations, business,

and assets of IFAST.

On April 28, 2005, the court granted the motion of IFAST, LTD. to intervene in this case

and denied ATIS's motion to disqualify Albert Gidari and Perkins Coie LLP as IFAST, LTD.'s

counsel.[1]  ATIS also sought a preliminary injunction against all of the defendants to stop their

---

[1] IFAST, LTD., a Maryland corporation, asserts that it is the successor in interest to
IFAST, an unincorporated association that was previously affiliated with ATIS.  Whether IFAST
LTD. is, in fact, IFAST's successor will be addressed in this court's opinion in IFAST, LTD. v.
ATIS, Case No. CCB 05-1448.

involvement with IFAST and their use of IFAST's assets.  This court, after hearing oral

argument on May 9, 10, and 19, 2005, denied ATIS's motion.  Now pending before this court are

three unresolved issues: (1) a motion to dismiss by Crowe and CNP arguing that this court

cannot assert personal jurisdiction over them; (2) a motion by ATIS to impose sanctions on Hall

for the spoliation of evidence; and (3) a dispute between ATIS and defendants over a series of

emails between Edward A. Hall and Albert Gidari, which IFAST, LTD. asserts are protected by

the attorney-client privilege.   For the reasons that follow, I will deny both motions and will find

the emails in question are not protected by the attorney-client privilege.

BACKGROUND

This discussion is based on the record developed in connection with the preliminary

injunction hearing on May 9, 10, and 19, 2005, at which documents and testimony were

received.  I also grant ATIS's motion for leave to file additional evidence, notably excerpts from

the deposition of defendant David Crowe, which will become part of the record.

ATIS is a leading not-for-profit trade association in the telecommunications industry.

Established in the 1980s, ATIS now has more than 300 member companies.  Its mission is to

develop and promote technical and operational standards for the benefit of the communications

industry.  ATIS undertakes its work through 22 open industry committees and forums, which

include the IFAST forum.

From its inception in the 1990s, IFAST has been an open international forum focused on

issues in the context of international roaming services used by subscribers to ANSI-41-based

wireless networks.  Among other duties, IFAST assigns and maintains International Roaming

Mobile Identification Numbers ("IRMs").  IRMs are wireless telephone codes assigned to

domestic cellular telephones so that individuals traveling internationally will not experience

conflicts with telephone numbering systems in foreign countries.  Without IRMs, wireless ANSI-

41-based networks could not offer international roaming services.

IFAST obtains administrative support through other organizations that agree to serve as

IFAST's secretariat, a function that consists primarily of: (1) maintaining records; (2) arranging

meetings; (3) collecting funds on behalf of IFAST; and (4) other secretarial and clerical duties.

IFAST has had a series of secretariats.  The first secretariat was the organization now known as

the Cellular Telecommunications and Industry Association.  The second, for a brief period,  was

the Telecommunications Industry Association.  The third, starting in mid 2000, was ATIS.

Defendant Edward A. Hall, a founding organizer of the IFAST forum, left CTIA and

became employed with ATIS in May 2000.  Hall was assigned the responsibility of overseeing

ATIS's growing technical programs, including, but not limited to, involvement in the wireless

industry.  Once ATIS decided to sponsor IFAST, Hall participated in the operations of IFAST in

connection with ATIS.  Hall is a resident of West Friendship, Maryland.

Defendant David Crowe and his company, CNP, have performed numbering resource

assignment, data base design, and other technical services for IFAST since October 1999.

Crowe also assisted ATIS with invoicing and billing IRM subscribers. Crowe and CNP are

residents of Calgary, Alberta, Canada.

By no later than May 2004, while still in ATIS's employ, Hall made it known to third-

parties that he was interested in finding employment elsewhere.  Hall was unsuccessful in his

attempts to find a new job. Subsequently, in October 2004, Hall, allegedly with the assistance of

defendants Lynsie Hall and OmniLearn, commenced steps to establish a separate business entity

to take over the operations of IFAST.  According to ATIS, Lynsie Hall and OmniLearn arranged

for a business analysis to be performed.  The "analysis" apparently consisted of some numerical

projections done by a neighbor of the Halls unfamiliar with the actual operations of IFAST.

On November 12, 2004 Hall registered TXI as an active business corporation with the

State of Maryland.  Hall then presented his resignation from ATIS on November 15, 2004.

Though he sought to terminate his employment that day, upon discussion with ATIS President

Susan Miller Hall agreed that his resignation would become effective on November 24, 2004.

In December 2004, IFAST notified ATIS that IFAST no longer required secretariat

support from ATIS, and requested that all IFAST material be returned to Crowe.  This decision

was made by IFAST's five-member management team, which consisted of: (1) David

Grootwassink, an executive at VeriSign; (2) Syed Zaeem Hosain, Chief Technology Officer of

Aeris, Inc.; (3) Bernardo Martinez, a representative of a number of Mexican telecom companies;

(4) David Crowe; and (5) Edward Hall.  IFAST has been provided with secretariat, coordinating,

and management services by TXI since December 2004.  Pursuant to this arrangement, IRM

administration fees are remitted to TXI's bank account in Maryland.  Hr'g Tr. 500.  TXI, in turn,

pays Crowe and CNP a flat fee of $5,417 per month for IRM administration services.

In early January 2005, IFAST's management team decided to incorporate the association

as a nonprofit company under Maryland law.  The new corporation is called IFAST, LTD.  The

five management team members agreed to serve as the company's initial directors.

Grootwassink also agreed to serve as Chairman.[2]  IFAST, LTD.'s headquarters is the Halls'

---

[2] After IFAST, LTD. informed the court of its intention to intervene in this proceeding, VeriSign, which is represented on ATIS's board of directors, instructed Grootwassink to resign from IFAST.  He did so.  Martinez became the new Chairman of IFAST, LTD.

home in West Friendship, Maryland.

ANALYSIS

1.      Personal Jurisdiction over Crowe and CNP

Crowe and CNP have filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2),

arguing that this court cannot assert personal jurisdiction over them. When a defendant

challenges a court's personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil

Procedure, the burden rests ultimately with the plaintiff to prove, by a preponderance of the

evidence, grounds for jurisdiction.  *See Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*

334 F.3d 390, 396-97 (4th Cir. 2003). Special care must be exercised when extending personal

jurisdiction across international borders.  *Asahi Metal Industry Co., Ltd. v. Superior Court of*

*California,* 480 U.S. 102, 115 (1987).

A.      Maryland Long-Arm Statute and the Fourteenth Amendment

A federal court may exercise personal jurisdiction over a nonresident defendant if (1)

jurisdiction is authorized under the long-arm statute of the forum state, and (2) the assertion of

jurisdiction comports with the Fourteenth Amendment due process requirements.  *See Christian*

*Sci. Bd. of Dirs. of First Church of Christ, Scientist v. Nolan,* 259 F.3d 209, 215 (4th Cir. 2001).

The Maryland Court of Appeals has held that Maryland's long-arm statute is co-extensive with

the scope of jurisdiction permitted by the due process clause of the Fourteenth Amendment, and

the statutory and constitutional inquiries therefore merge in this case.  *See Carefirst,* 334 F.3d at

396-97.  The Maryland long-arm statute, however, limits specific jurisdiction to cases where the

cause of action "aris[es] from any act enumerated" in the statute itself.  Md. Code Ann., Cts. &

Jud. Proc. § 6-103(a).  Thus, a plaintiff must "identify a specific Maryland statutory provision

authorizing jurisdiction." *Ottenheimer Publishers, Inc. v. Playmore, Inc.,* 158 F.Supp.2d 649,

652 (D.Md. 2001); *see also Joseph M. Coleman & Assoc. Ltd. v. Colonial Metals,* 887 F.Supp.

116, 118-19, n.2 (D.Md. 1995). ATIS relies on a provision of Maryland's long-arm statute that

confers personal jurisdiction over a corporation that "transacts any business" in the state. Md.

Code. Ann., Cts. & Jud. Proc. § 6-103(b)(1).

The nature of the claim and the defendant's contact with the forum determine whether a

court may assert specific or general personal jurisdiction. Specific jurisdiction may exist where

the claim is related to or arises out of the defendant's contacts with the state. *See Helicopteros*

*Nacionales de Columbia v. Hall,* 466 U.S. 408, 414 (1984); *Christian Sci. Bd. of Dirs.,* 259 F.3d

at 215-16. ATIS asserts that the court has specific jurisdiction over Crowe and CNP, because

ATIS's claims arise out of their contacts with IFAST, LTD., a Maryland corporation, and the

actions leading up to the formation of that corporation. ATIS also asserts that its claims arise out

of the contacts between the defendants and TXI, another Maryland corporation. To determine

whether the exercise of specific jurisdiction comports with due process, the court must consider:

"(1) the extent to which the defendant has purposefully availed itself of the privilege of

conducting activities within the state; (2) whether the plaintiffs' claims arise out of those

activities directed at the state; and (3) whether the exercise of personal jurisdiction would be

constitutionally reasonable." *Carefirst,* 334 F.3d at 397 (internal quotation omitted). A

defendant has purposefully availed himself of the privilege of conducting business in the forum

state if the defendant has created a "substantial connection" to the forum. *Ellicott Mach. Corp.,*

*Inc. v. John Holland Party Ltd.* 995 F.2d 474, 477 (4th Cir. 1993). In evaluating whether the

exercise of jurisdiction is "constitutionally reasonable," the courts may weigh "the burden on the

6

defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in

obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the

most efficient resolution of controversies, and the shared interest of several States in furthering

fundamental social policies." *Christian Sci. Bd. of Dirs.,* 259 F.3d at 217, *quoting Burger King*

*Corp. v. Rudzewicz,* 471 U.S. 462, 477 (1985).

According to ATIS, several activities demonstrate Crowe and CNP conducted business in

the State of Maryland which, as a threshold matter, is necessary to confer jurisdiction on this

court pursuant to Maryland's long-arm statute. *See* Md. Code. Ann., Cts. & Jud. Proc. § 6-

103(b)(1).  First, ATIS asserts that Crowe and CNP had an agreement with Hall and TXI to

provide IRM administrative services to those defendants in Maryland.  Crowe and CNP take

issue with this assertion, arguing that they did not, in fact, have an agreement to provide IRM

administrative services to Hall or TXI.  This argument is beside the point, however, because it is

clear that Crowe and CNP did have an agreement to provide IRM administrative services to

IFAST, LTD.  Pl.'s Mot. for Supp. Evidence, Ex. 1 at 13-14.  Because IFAST, LTD. is a

Maryland corporation, and Crowe and CNP admit that they provided services to IFAST, LTD.

on a regular and frequent basis, Crowe and CNP necessarily conducted business in the State of

Maryland.

Second, ATIS argues that Crowe and CNP derive revenue from the IRM administrative

services they provide to Hall and TXI in Maryland.  Once again, Crowe and CNP argue that they

do not provide services to Hall and TXI, but instead provide services to IFAST, LTD.  This is a

distinction without a difference, for the reasons stated above.  Moreover, this is not a case

involving an isolated act. *Cf. Shamsuddin v. Vitamin Research Products,* 346 F.Supp.2d 804,

813 (D.Md. 2004) ("A corporation's sales to forum residents must be more than 'isolated'

occurrences for the assertion of jurisdiction to satisfy the requirements of due process.").  To the

contrary, Crowe and CNP have an agreement with IFAST, LTD. pursuant to which they will

receive a flat fee of $5,417 per month paid out of the IRM assignment fees remitted to Hall and

TXI.  Pl.'s Opp., Ex. 1 at 88-90, Ex. 15.  The ongoing nature of this payment scheme satisfies the

requirements of Maryland's long-arm statute.

Third, ATIS asserts that Crowe and CNP currently are performing work for IFAST, LTD.

and have been since February 17, 2005.  Crowe submits invoices for the work to defendant TXI,

a Maryland corporation.  Pl.'s Mot. for Supp. Evidence, Ex. 1 at 14.  TXI then pays Crowe and

CNP through Chevy Chase Bank, a Maryland bank.  *Id.,* Ex. 1 at 24; Hr'g Tr. 500.  Where, as

here, a defendant regularly performs work for a Maryland corporation, mails invoices to that

corporation in Maryland, and that corporation, in turn, pays those invoices from a bank in

Maryland, such actions establish personal jurisdiction over the defendant in the State of

Maryland.[3]  *See Prestige Wine & Spirits, Inc. v. Martel and Co.,* 680 F.Supp. 743, 744 (D.Md.

---

[3] Crowe argues that any action he undertook on behalf of CNP in Maryland was as a representative of the corporation and not in his individual capacity.  Pursuant to the fiduciary shield doctrine, there can be no basis for jurisdiction over Crowe for the acts of CNP.  The fiduciary shield doctrine holds "a federal court may not exercise personal jurisdiction over a corporation's agent if the agent's only connection to the forum state is as an officer or employee of a non-resident corporation that committed a tort in the state, and if the agent's own involvement in that tort occurred outside of the forum state." *Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Technology Finance Group, Inc.,* 299 F.Supp.2d 505, 514 (D.Md. 2004); *see also Cawley v. Bloch,* 544 F.Supp. 133, 135 (D.Md. 1982) (holding that "contacts as a corporate representative do not give rise to personal jurisdiction over the individual.") (internal citations omitted).  Thus, to the extent that Crowe undertook any of these activities on behalf of CNP, these activities would support personal jurisdiction over CNP but not Crowe.  Crowe, however, also has substantial individual personal contacts with the state.  (It may also be noted that CNP has only two paid employees: Crowe and his wife.)

1988).

Finally, ATIS asserts that Crowe is a director of IFAST, LTD., a Maryland Corporation, and has been a director since February 17, 2005.  Pl.'s Mot. for Supp. Evidence, Ex. 1 at 9. Crowe, moreover, participated by telephone in a directors meeting held in Baltimore, Maryland on February 17, 2005.  *Id.,* Ex. 1 at 23-24.  It is well established that a court may assert personal jurisdiction where the defendant is an officer or director of a corporation based in the forum state.  *See Pittsburgh Terminal Corp. v. Mid Allegheny Corp.*, 831 F.2d 522, 527-29 (4ᵗʰ Cir. 1987). Where, as here, the defendant has accepted and exercised a directorship of a Maryland corporation whose principal place of business is in Maryland, the defendant has established sufficient contacts so that he should have reasonably expected to be sued in Maryland's courts. In sum, ATIS has shown that Crowe does, in fact, transact business in the State of Maryland, in conformance with Maryland's long-arm statute.[4]

These acts, taken together, also establish the defendants' personal contacts with the State of Maryland and their purposeful availment of Maryland's laws, providing the basis for specific jurisdiction.  To be more precise, Crowe and CNP purposefully transacted business in Maryland with, and derived revenues from, the provision of IRM administration services to IFAST, LTD., through TXI.  Crowe also serves personally as a director of IFAST, LTD., which is a Maryland corporation.  Hence, there can be little doubt that Crowe and CNP have purposefully availed

---

[4]ATIS asserts that Crowe contacted fellow defendant Edward Hall in Maryland via telephone.  ATIS also asserts that Crowe contacted four Maryland residents, via email, to ask whether they had information that may be relevant to IFAST, LTD. in this litigation.  These contacts would not alone be sufficient to establish minimum contacts with the State of Maryland. *See Harte-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Technology Finance Group, Inc.*, 299 F.Supp.2d 505, 513, n.5, *citing Ritz Camera Ctrs., Inc. v. Wentling Camera Shops, Inc.,* 982 F.Supp. 350, 354 (D. Md. 1997); *Cape v. von Maur,* 932 F.Supp. 124, 128 (D.Md. 1996).

themselves of the privilege of doing business in the State of Maryland. Likewise, ATIS's claims

in this case arise directly from the contacts between defendants and Maryland. Indeed, all of the

defendants' activities in Maryland were allegedly intended to further the scheme that gives rise

to ATIS's claims of civil conspiracy, conversion, breach of fiduciary duty, and tortious

interference.

Finally, the assertion of authority over Crowe is constitutionally reasonable. It does not

pose an unreasonable burden for Crowe to defend this lawsuit. *See Giannaris v. Cheng,* 219

F.Supp.2d 687, 693 (D.Md. 2002) (the fact that business records and witnesses might be forced

to travel from the Bahamas to Maryland did not negate the court's personal jurisdiction over the

defendant). Indeed, "[i]n this modern world, it is not unfair to require defendants to travel some

distance to defend lawsuits." *Potomac Design, Inc. v. Eurocal Trading, Inc.,* 839 F.Supp. 364,

371 (D.Md. 1993). Crowe already has established a connection to the State of Maryland, as he

serves as a director of a newly formed Maryland corporation that has intervened (for limited

purposes) in this lawsuit and has filed a separate (but related) suit against ATIS. Also, Maryland

has a manifest interest in discouraging tortious conduct within its borders, and ATIS's interest in

obtaining convenient and effective relief weighs in favor of jurisdiction because the majority of

the relevant evidence and witnesses are located within the State of Maryland.[5]

For the foregoing reasons, I find that this court has personal jurisdiction over Crowe and

---

[5] Crowe asserts that the majority of the evidence that is relevant to this case is located in
Washington, D.C., not Maryland. That is not clear. ATIS's lawsuit rests substantially on the
activities of the Halls, both of whom are Maryland residents, and the activities of TXI and
IFAST, LTD., both of which are Maryland corporations. Even if jurisdiction was proper in
Washington, D.C., I fail to understand how traveling to Washington would be any less
burdensome for the defendants than traveling to Baltimore.

CNP pursuant to Maryland's long-arm statute.  Accordingly, I deny their motion to dismiss this

action for lack of personal jurisdiction subject to Fed.R.Civ.P. 12(b)(2).

        B.        Conspiracy Theory of Personal Jurisdiction

        In the alternative, plaintiff asserts that this court also has personal jurisdiction over

Crowe under the conspiracy theory of jurisdiction.[6]  Pursuant to this theory, "an out-of-state

party involved in a conspiracy who would lack sufficient, personal, 'minimum contacts' with the

forum state if only the party's individual conduct were considered nevertheless may be subject to

suit in the forum jurisdiction based upon a co-conspirator's contacts with the forum state."

*Mackey v. Compass Marketing, Inc.,* 2006 WL 321962 (Md. Feb. 9, 2006).  The conspiracy

theory of jurisdiction is based on two principles: "(1) that the acts of one co-conspirator are

attributable to all co-conspirators; and (2) that the constitutional requirement of minimum

contacts between non-resident defendants and the forum can be met if there is a substantial

connection between the forum and a conspiracy entered into by such a defendant."  *Id., citing*

*Cawley,* 544 F.Supp. at 135.  The Maryland Court of Appeals, citing *Cawley,* held that when (1)

two or more individuals conspire to do something (2) that they could reasonably expect to lead to

consequences in a particular forum, if (3) one co-conspirator commits overt acts in furtherance of

the conspiracy, and (4) those acts are of a type which, if committed by a non-resident, would

---

[6] When the parties briefed this issue, no Maryland state court had recognized this theory as a part of Maryland law.  Indeed, on March 25, 2005, the court in *Compass Marketing, Inc. v. Schering-Plough Corp.,* Civ. No. 04-CV-1663-AMD (D. Md. March 25, 2005) (Davis, J.) denied without prejudice a motion to dismiss for lack of personal jurisdiction that raised the question whether Maryland law recognizes the conspiracy theory of personal jurisdiction.  Judge Davis concluded that the question should be certified to the Maryland Court of Appeals.  On February 9, 2006, the Maryland Court of Appeals recognized the conspiracy theory of personal jurisdiction and adopted the framework set forth in *Cawley v. Bloch,* 544 F.Supp. 133 (D.Md. 1982). *Mackey v. Compass Marketing, Inc.,* 2006 WL 321962 (Md. Feb. 9, 2006).

subject the non-resident to personal jurisdiction under the long-arm statute of the forum state, then those overt acts are attributable to the other co-conspirators, who thus become subject to personal jurisdiction in the forum, even if they have no direct contacts with the forum. *Id.*

Without reaching a final decision on this issue, it appears likely that this court could exercise personal jurisdiction over Crowe and CNP under the *Mackey* case.

2.      ATIS's Motion for Spoliation Relief

ATIS moves the court to impose sanctions on Hall for the spoliation of evidence likely to be directly relevant to the issues in this case.  According to ATIS, Hall deleted emails from ATIS's server, outside the presence of ATIS's IT supervisor, prior to his departure from ATIS. ATIS also asserts that Hall replaced the hard drive on a computer that he used in connection with ATIS activities, precluding ATIS from determining if Hall removed files and materials upon his departure from ATIS. As a sanction, ATIS asks the court to infer that Hall improperly converted materials belonging to ATIS and engaged in acts of disloyalty contrary to his duty to ATIS.  For the reasons that follow, I conclude that it would be improper to adopt adverse inferences against Hall on the basis of the "spoliation" of evidence.

"The evidentiary spoliation doctrine is a rule of evidence, administered at the discretion of the trial court to respond to circumstances in which a party fails to present, loses, or destroys evidence." *Hartford Ins. Co. of Midwest v. American Automatic,* 23 F.Supp.2d 623, 626 (D.Md. 1998).  The court has wide discretion to address the situation, including ordering dismissal, granting summary judgment, or permitting an adverse inference to be drawn against the party. *Id.; see also Vodusek v. Bayliner Marine Corp.,* 71 F.3d 148, 156 (4th Cir. 1995).  The rule takes into account the "blameworthiness of the offending party and the prejudice suffered by the

opposing party." *Hartford,* 23 F. Supp.2d at 626.

An adverse inference is not a sanction that is to be given lightly. "Accordingly, because it is an extreme sanction, three things must be shown to warrant an adverse inference instruction for spoliation of evidence: (1) the party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a 'culpable state of mind;' and (3) the evidence that was destroyed or altered was 'relevant' to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it." *Thompson v. HUD,* 219 F.R.D. 93, 101 (D.Md. 2003).

There is no question that Hall had a duty to preserve the evidence on his hard drive, and that the evidence was relevant to this cause of action. Hall's duty to preserve all relevant information began in February 2005, when he received ATIS's complaint. Nonetheless, Hall subsequently disposed of the hard drive of his computer, which had been used while he was employed by ATIS.

Regarding Hall's emails, however, the duty to preserve is not so clear. The Fourth Circuit has held that "[t]he duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation...." *Silvestri v. General Motors Corp.* 271 F.3d 583, 591 (4th Cir. 2001). Contrary to the assertions of ATIS, I do not think that Hall would have anticipated litigation at the end of his employment with ATIS. Indeed, based on the facts of this case, it appears the litigation came as a surprise to Hall and the other defendants.

In any event, the testimony and exhibits offered at the hearing do not demonstrate that

Hall had the requisite "culpable state of mind." "An adverse inference ... cannot be drawn merely

from his negligent loss or destruction of evidence; the inference requires a showing that the party

knew the evidence was relevant to some issue at trial and that his *willful* conduct resulted in its

loss or destruction." *Vodusek,* 71 F.3d at 156 (emphasis added).  Hall testified that he replaced

the hard drive on his computer because it gave him indications that it was failing.  Importantly,

Hall backed up all of the files on a CD, and produced documents off that CD upon request from

ATIS.  Hr'g Tr. 526-27.  If Hall was trying to destroy evidence, it does not make sense that he

would back-up the files on his computer.  With regard to the deletion of his email messages, Hall

explained that he simply was trying to avoid cluttering up ATIS's server with unneeded emails.

Hr'g Tr. 513-14.   According to Hall, he forwarded all actionable emails in his inbox to

individuals on his staff, and deleted the remaining emails that were not actionable, sent, or

formally deleted but still on the server.  *Id.*  Hall, moreover, was in charge of the IT Department,

and as such, knew that ATIS kept records of employee email on back-up tapes.  Hr'g Tr. 176-77,

182-83, 515.  As a result, he knew that ATIS could retrieve his emails even if he deleted them

from the server.  Indeed, the only reason that ATIS does not have access to copies of Hall's

emails after November 5, 2004, is because ATIS taped over the relevant back-up tapes.  Hr'g Tr.

183, 605.  There is no reason that Hall would have known about this fact at the time he deleted

the emails.  In sum, ATIS has failed to demonstrate that Hall willfully destroyed relevant

evidence.  As such, it would be inappropriate to impose an adverse inference.

3.      The Hall-Gidari Emails

        The emails that are the subject of this dispute were exchanged between Edward Hall and

his personal attorney, Albert Gidari, in October 2004 using Hall's ATIS email account.[7]  In a

series of emails, Hall informed Gidari about his plans to leave ATIS and to "take IFAST with

me."  Pl.'s Reply, Ex. 2.  Specifically, on October 16, 2004 Hall told Gidari in an email that the

"[t]ime has come for me to leave ATIS" and solicited Gidari's assistance.  *Id.*  Gidari agreed to

help.  *Id.*  Thereafter, Hall forwarded to Gidari a copy of a business plan that Lynsie Hall's

"COO" had created for the company.  This business plan was to be the basis for Hall's takeover

of IFAST's operations.  In a matter of hours, Gidari responded that he "liked" the business plan,

stating that "there is a lot there for sure."  *Id.*  Gidari solicited additional information about the

relationship between ATIS and IFAST, asking how ATIS "hooks into it."  *Id.*  He also inquired

into Hall's obligations to ATIS.  IFAST, LTD. asserts these emails are protected from disclosure

by the attorney-client privilege.[8]

A prerequisite for the attorney-client privilege is that the communication to be protected

must be confidential. *Trupp v. Wolf,* 335 A.2d 171, 184 (Md. Ct. Spec. App. 1975).  As such, the

communication generally cannot made in the presence of a third person.[9]  *Id.*  IFAST, LTD.

appears to argue that a communication is confidential so long as the proponent of the

communication intended it to be confidential and had the subjective belief that the

communication would be confidential.  Def.'s Opp. 5-6.  IFAST, LTD. relies on Hall's

---

[7] The court heard oral argument concerning the status of these emails at the preliminary injunction hearing.  The emails themselves were introduced into evidence at that hearing.

[8]  Hall, to whom any privilege belongs, joins in this assertion.

[9] While it is true that in a more recent case, the Maryland Court of Appeals found "the mere presence of a third party ... does not constitute a waiver of the privilege per se," *Newman v. State,* 863 A.2d 321, 333 (Md. 2004), the client's expectation of confidentiality still must be objectively reasonable.  For the reasons that follow, I do not believe that IFAST, LTD. can make this showing.

declaration to provide that subjective belief of confidentiality. *Id.* at Ex. 3.  The law, however,

requires that the expectation of confidentiality be both subjectively and objectively reasonable.

*Cutchin v. Maryland,* 792 A.2d 359, 366 (Md. Ct.Spec. App. 2002) (the person claiming the

privilege must have a "reasonable expectation of confidentiality."); *In re Asia Global Crossing*

*Ltd.,* 322 B.R. 247, 255 (Bankr. S.D.N.Y. 2005) ("Confidentiality has both a subjective and

objective component; the communication must be given in confidence, and the client must

reasonably understand it to be so given.").  Hall's belief that the emails were confidential thus

satisfies only the first part of the test; the court must also determine whether his belief in the

confidentiality of the emails was objectively reasonable.  Based on the facts of this case, it was

not.

An employee's expectation of privacy in his office, desk, and files "may be reduced by

virtue of actual office practices and procedures, or by legitimate regulation."  *O'Connor v.*

*Ortega,* 480 U.S. 709, 717 (1987); *see also United States v. Simons,* 206 F.3d 392, 398 (4th Cir.

2000) ("office practices, procedures, or regulations may reduce legitimate privacy

expectations.").  In light of the variety of work environments, whether an employee has an

objectively reasonable expectation of privacy must be decided on a case-by-case basis.

*O'Connor,* 480 U.S. at 717.  The *Asia Global Crossing* opinion is instructive in this regard.  In

that case, the bankruptcy trustee sought production of emails sent by the debtor's former

employees to their personal attorney regarding "actual or potential disputes" with the debtor. 322

B.R. at 256.  The emails were sent using the debtor-employer's email system.  The court, having

failed to locate any decisions discussing the confidentiality of an employee's email in terms of

the attorney-client privilege, looked for guidance in the case law addressing "the analogous

question of the employee's expectation of privacy in his office computer and the company email

system." *Id.* at 255.  The court determined that the objective reasonableness of any expectation

of confidentiality "will depend on the company's email policies regarding use and monitoring,

its access to its email system, and the notice provided to the employees." *Id.* at 259.[10]

Applying the *Asia Global Crossing* factors to this case, Hall did not have an objectively

reasonable expectation of privacy.  First, it is clear that ATIS had access to Hall's email. ATIS

had access to its own servers and any other part of the system where email messages were stored.

Indeed, if ATIS did not have access, it would not have been able to review Hall's emails to

Gidari after Hall left his employment with ATIS.

Second, ATIS imposed limitations on employee use of its email system, and Hall had

notice of these limitations.  It is undisputed that ATIS had an employee handbook, which Hall

was aware of and agreed to follow.  Pl.'s Reply at Ex. 1.  The handbook states the following with

regard to emails:

> Email communications are considered business documents.  Use of the ATIS e-
> mail system is intended for business purposes only and personal security of e-mail
> cannot be guaranteed.  While it is not ATIS's intention to monitor e-mail usage
> and/or to access employee e-mail on a regular basis, there may be occasions when
> it is necessary for ATIS to access an employee's e-mail account.  Such occasions
> may include, but are not limited to, obtaining information in a business
> emergency in the absence of an employee; retrieving lost messages; and ensuring
> that e-mail is being used for business purposes and not for personal, improper or
> illegal activities.

---

[10] IFAST, LTD. relies on *Carter v. State,* 817 A.2d 277 (Md. Ct. Spec. App. 2003) to
support its argument that Hall had a reasonable expectation of privacy in his emails to Gidari.  In
*Carter,* however, the court dealt with the factually inapposite situation of a prisoner whose
confidential, privileged legal communications were taken during a search of his jail cell.  The
factual situation here is aligned with that of *Asia Global Crossing,* not *Carter.*

Pl.'s Reply 5.  Thus, at the time Hall sent the emails to Gidari, he was on notice that ATIS did

not consider the emails on its server to be private and expressly reserved the right to inspect an

employee's email to ensure that the employee was not using the email system for personal or

improper activities, which is precisely what ATIS claims Hall's emails represent.  Indeed, courts

facing analogous facts have found no reasonable expectation of privacy where the employer

makes known to its employees that no such expectation exists with regard to emails and

computer use. *See Simons,* 206 F.3d 392 (CIA division's official Internet usage policy eliminated

any reasonable expectation of privacy that employee might otherwise have in copied files

because it allowed monitoring of "all file transfers, all web sites visited, and all e-mail

messages."); *Thygeson v. U.S. Bancorp.,* 2004 WL 2066746 (D.Or. 2004) (no reasonable

expectation of privacy in workplace email where employer had an explicit policy banning

personal use of computers and permitting monitoring); *Kelleher v. City of Reading,* 2002 WL

1067442 (E.D. Pa. 2002) (no reasonable expectation of privacy in workplace email where

employer's written policy informed employees there was no expectation of privacy); *Garrity v.*

*John Hancock Mut. Life Ins. Co.,* 2002 WL 974676 (D. Mass. 2002) (employees had no

expectation of privacy where they admitted knowing employer had the ability to look at email on

company's intranet system, and knew they had to be careful about sending emails); *United States*

*v. Monroe,* 52 M.J. 326 (C.A.A.F. 2000) (sergeant had no reasonable expectation of privacy in

his government email account because email use was reserved for official business and network

banner informed each user logging onto the network that use was subject to monitoring).[11]

---

[11] *Haynes v. Office of the Attorney General Phill Kline,* 298 F.Supp.2d 1154, 1162 (D.
Kan. 2003), which IFAST, LTD. cites in support of its argument that Hall had a reasonable
expectation of privacy, is easily differentiated from the facts of this case.  In *Haynes,* the

Hall attempts to circumvent the consequences of ATIS's email policy by asserting that he

sent the emails to Gidari using his own laptop computer on a Saturday during non-work hours.

Def.'s Opp. at Ex. 3.  This fact is not persuasive, however; the more important fact is that Hall

used ATIS's system to transmit the emails.  Hall, moreover, makes much of the fact that ATIS

did not monitor employee emails with regularity.  ATIS clearly reserved the right to monitor

employee email, however, and Hall was on notice of this fact.  It was objectively unreasonable

for Hall to believe that ATIS would not exercise that right, particularly once he departed ATIS as

he was planning to do.

Consequently, I find that Hall had no reasonable expectation that email messages sent

using ATIS's email system would be confidential.  Therefore, no privilege can be attached to the

emails he sent to Gidari through the ATIS email system.  *Cf. In re Grand Jury Subpoena,* 341

F.3d 331, 336 (4th Cir. 2003) (when the party claiming the privilege has made any disclosure of a

confidential communication to any individual who is not embraced by the privilege, "such a

disclosure vitiates the confidentiality that constitutes the essence of the attorney-client

privilege.").

A separate Order follows.

---

employer had no written email policy – only a brief message displayed at log-in that informed
the user there was no expectation of privacy. Moreover, employees received express indications
that they were "allowed to use their work computers for private communications," and were even
"told how to create 'public' and 'private' files." *Id.*  Finally, the court in *Haynes* did not, in fact,
find that the plaintiff had a reasonable expectation of privacy with regard to his email.  To the
contrary, the court merely held that the employee had "produced sufficient evidence to raise
serious issues so as to make them fair ground for litigation," but that this was not "the final word
on th[e] issue." *Id.*

<u>    March 28, 2006    </u>                               <u>                     /s/                     </u>
        Date                                                Catherine C. Blake
                                     United States District Judge